IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RECEIVERSHIP MANAGEMENT, INC. IN ITS CAPACITY AS INDEPENDENT FIDUCIARY OF THE AEU HOLDINGS, LLC EMPLOYEE BENEFIT PLAN AND PARTICIPATING PLANS, <br>    Plaintiff, <br><br> v. <br><br> LOCKE LORD LLP, <br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) | Case No. 18-cv-08158 <br><br> Hon. John F. Kness <br><br> Magistrate Judge Beth W. Jantz |

**LOCKE LORD LLP'S MOTION FOR RULING ON PRIVILEGE WAIVER
OR FOR ENTRY OF A PROTECTIVE ORDER**

RMI has served document requests on Locke Lord seeking the production of, among other documents, Locke Lord's communications with two of its former and apparently now defunct clients, AISM and Veritas.[1] Because RMI has requested documents that were (and potentially remain) subject to the attorney-client privilege, Locke Lord has objected to producing the documents absent a determination by the Court as to whether the privilege remains in effect. Locke Lord therefore moves the Court either to determine that the privilege has been waived or to enter a protective order authorizing Locke Lord to withhold production.

Locke Lord has no objection to producing the documents if the Court finds that there has been a waiver and, regardless of privilege, reserves its right to do so under applicable Rules of Professional Conduct in order to defend itself in this litigation.[2] Indeed, a finding that any privilege

---

[1] As used herein: (i) "RMI" means Plaintiff, Receivership Management, Inc.; (ii) "Locke Lord" means Defendant, Locke Lord LLP; (iii) "AISM" means ALLInsurance Solutions Management, LLC; (iv) "AEUH" means AEU Holdings LLC; and (v) "Veritas" means Veritas Benefits, LLC.

[2] The ABA's Model Rules presumptively apply. *See* N.D. Ill. Local Rule 83.50. Under Model Rule 1.6(b)(3), Locke Lord is entitled to use some or all of the requested documents to the extent Locke Lord reasonably believes necessary to establish a defense in this case.

belonging to AISM and/or Veritas has been terminated will expedite Locke Lord's document review and production because it will be relieved of the burden of making individualized privilege determinations on, and creating a privilege log for, a substantial volume of documents.

As discussed below, substantial authority supports waiver because: (1) AISM, a Georgia limited liability company, dissolved in 2016 and apparently sold substantially all of its assets to AEUH in 2016; and (2) Veritas, a Nevada limited liability company, although not formally dissolved, has apparently been defunct for several years, and its entity status has been "permanently revoked" by Nevada. However, privilege belongs to the client, not the lawyer, and it generally is not for the lawyer to unilaterally decide a former client's privilege. As AISM and Veritas's former counsel, Locke Lord seeks to balance (i) any ethical or other obligations it may still have to its former (albeit apparently now defunct) clients to assert any possible privilege, and (ii) its duty to comply with discovery obligations and its right to defend this case. In this sense, Locke Lord's position is akin to interpleader—it has possession of documents over which there may be conflicting claims (amongst RMI and Locke Lord's former clients.)

Locke Lord, therefore, neither advocates for nor opposes a finding of waiver at this time and instead seeks an Order determining whether otherwise privileged documents and communications remain subject to the attorney-client privilege. If the Court determines that the privilege remains intact, Locke Lord requests that this Court enter a protective order pursuant to Federal Rule of Civil Procedure 26(c), limiting the scope of RMI's discovery by ordering that Locke Lord need not produce communications with AISM and/or Veritas that remain subject to the attorney-client privilege.

As part of the Local Rule 37.2 conferral process, discussed in more detail below, RMI asked Locke Lord to include the following statement:

> While Plaintiff believes the facts and the law clearly support the waiver or termination of all privileges and, thus, does not oppose such a finding, it objects to

2

> Locke Lord's refusal to "advocate" for its own Motion, and to certain statements and representations in the Motion, some apparently based on documents Plaintiff has not been provided. Plaintiff reserves the right to file a Response addressing these matters to the extent deemed necessary pursuant to the Minute Entry dated January 20, 2023, Dkt. #116.

Email dated January 23, 2023, at 12:34 pm, part of Locke Lord/RMI email exchanges (without attachments), Group Ex. A.

In an email of January 25, 2023, RMI's counsel further stated that the AISM and Veritas privileges "have already been conclusively waived and/or terminated." Email dated January 25, 2023, at 9:13 am, Group Ex. A. RMI refused Locke Lord's request to designate this Motion as uncontested and contended that "[t]here is no discovery dispute here." Email dated January 25, 2023, at 9:43 pm, Group Ex. A. RMI is wrong, as it seeks discovery of documents that Locke Lord cannot and will not produce in light of its duties to its former clients, absent a judicial determination that the privilege has been waived.

Although Locke Lord's former clients appear to be defunct, in an abundance of caution, this Motion is being served on (at their last known addresses): (i) AISM's former registered agent; (ii) Thomas Stoughton, one of AISM's last known officers and an individual party and signatory to the Asset Purchase Agreement between AISM and AEUH, discussed below; (iii) AEUH's registered agent; (iv) AEUH's lawyers in related litigation, *Walsh v. AEU Benefits, LLC, et al.*, No. 1:17-cv-07931 ("DOL Lawsuit"); (v) Sterling Godfrey Holding Inc., the manager for Veritas listed with the Nevada Secretary of State; (vi) Charles LaMantia and James D'Iorio, who apparently were the sole owners of Sterling Godfrey and had management roles with Veritas, and (vii) LaMantia's lawyers in the DOL Lawsuit. Such service answers the Court's question in its January 20, 2023 Order (Dkt. 116) as to whether interested parties will be identified and informed of this Motion. Answers to the Court's additional questions—whether it has authority to rule (yes)

and whether the request is for an advisory opinion (no)—are addressed in the argument section below.

## BACKGROUND

I. AISM

In December 2012, AISM retained Locke Lord to provide insurance regulatory compliance advice. In April 2016, AISM and AEUH entered into an Asset Purchase Agreement dated April 26, 2016, and effective March 31, 2016 (the "APA"). The APA acknowledged that AEUH had already been managing AISM's business of developing, managing, and administering health benefits plans since approximately June 1, 2015. The APA further provided that AEUH would purchase, with some exclusions, all assets of AISM, including all confidential information. The latter does not expressly include privileged communications but arguably is broad enough to do so.[3] (This Motion does not depend on the transfer of confidential information.)

In May 2016, AEUH separately retained Locke Lord to advise it "in connection with state insurance regulatory, Patient Protection and Affordable Care Act (PPACA), and Employee Retirement Income Security Act (ERISA) compliance matters in connection with employee health benefits plans and products developed by [AEUH], as may be requested by [AEUH]." AEUH Engagement Letter, Ex. B. Locke Lord last billed time to AISM in May 2016. AISM changed its name to AI-Closing 2017 LLC, effective May 26, 2016, and then apparently dissolved in December 2016. *See* Georgia Secretary of State website printout (as of January 18, 2023), Ex. C.

---

[3] A copy of the APA has not been attached to this Motion because it includes a confidentiality provision prohibiting dissemination beyond the parties to the APA, their attorneys, and certain others. Locke Lord will provide a copy of the APA to the Court for *in camera* review if it would assist the Court in resolving this Motion, although Locke Lord believes the relevant facts discussed herein should not be disputed. All other potentially interested parties—AEUH, AISM, and RMI—already have a copy of the APA. (RMI also produced a copy of the APA to Locke Lord in discovery.)

On October 25, 2022, RMI served its First Request For Production of Documents on Locke Lord ("RFP"), seeking, among others, "[a]ll documents related to or reflecting communications between Locke Lord and any other person or entity involving or pertaining to AISM." In December 2022, RMI gave Locke Lord a copy of a letter dated December 4, 2020, from AEUH to Locke Lord ("AEUH Waiver") in which AEUH expressly (i) waived "all privileges and immunities, including but not limited to the attorney-client privilege and work product immunity, which AEUH or [its affiliate AEU Benefits, LLC,] held or hold with respect to" Locke Lord "in any way related to the allegations asserted by" RMI in this litigation, and (ii) instructed Locke Lord to produce all such privileged communications to RMI in response to any document requests. AEUH Waiver, Ex. D. (Although addressed to Locke Lord and dated December 4, 2020, Locke Lord did not receive the letter until RMI provided it in December 2022.) In light of this letter from AEUH, Locke Lord intends to produce documents that include formerly privileged communications with AEUH. No such waiver letter or direction exists regarding AISM (or Veritas), to our knowledge.

II.  Veritas

In or about January 2016, Veritas retained Locke Lord to represent it in state insurance regulatory, PPACA, and ERISA compliance matters in connection with certain employee health benefits plans and products developed by Veritas. Locke Lord last billed time (and a small amount) to Veritas in February 2017.

According to the Nevada Secretary of State, Veritas's entity status has been "Permanently Revoked," and its date of termination is listed as "Perpetual." *See* Nevada Secretary of State website printout (as of January 17, 2023), Ex. E. While it is unclear when Veritas stopped operating, its last Annual Report Due Date is listed as August 2017, and its registered agent resigned in January 2019 and has not been replaced.

Veritas, LaMantia, and D'Iorio were named as defendants in the DOL Lawsuit. Veritas defaulted, and an Amended Final Judgment was entered against it on September 13, 2021. Amended Final Judgment Order, Ex. F. Both LaMantia and D'Iorio entered into Consent Orders with the DOL, by which they each agreed to cooperate fully with litigation brought by RMI, including by providing requested documents. Consent Order and Judgment (LaMantia) at ¶4, Ex. G; Consent Order and Judgment (D'Iorio) at ¶4, Ex. H.

The RFP directed Locke Lord to produce "[a]ll documents related to or reflecting communications between Locke Lord and any other person or entity involving or pertaining to. . . the AEU Plan." RMI defined "AEU Plan" as "any self-funded or partially or fully insured health benefit or health insurance program, plan, or policy created, sponsored, marketed, administered, underwritten, offered, sold or in any way involving. . . [Veritas], Veritas PEO, LLC, . . . and all persons acting or purporting to act on its behalf."[4]

## ANALYSIS

I. Threshold Issues: This Motion Seeks Resolution of An Actual Controversy, Not an Advisory Opinion, for which the Court Has Authority to Rule.

RMI has requested documents that are (or previously were) subject to an attorney-client privilege between Locke Lord and its former clients, AISM and Veritas. RMI has asserted that any former privilege has been waived, and that it will challenge any privilege claim made by Locke Lord on behalf of AISM or Veritas. But as AISM and Veritas's former counsel, Locke Lord's professional obligations prevent it from unilaterally determining that AISM and Veritas's documents are no longer privileged and producing such documents to RMI (other than documents that Locke Lord determines are necessary to defend itself). Because both entities apparently are

---

[4] Veritas PEO, LLC, a Florida limited liability company and affiliated entity of Veritas (but not a Locke Lord client), has apparently also been administratively dissolved. *See* Veritas PEO Florida Secretary of State Website Printout (as of January 18, 2023), Ex. I.

6

now defunct, Locke Lord has no former client to provide direction. Locke Lord thus must assert any tenable basis for privilege and withhold the documents absent a contrary ruling by this Court. *Cf.* ABA Formal Op. 473 (Feb. 2016), *available at* https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/aba_formal_opinion_473.pdf (stating that lawyer of unavailable former client should assert any non-frivolous bases that may exist for opposing production of client information and comply with any court order requiring production).

The Court will inevitably have to decide the privilege issue, either now, pursuant to this Motion, or in a few months, after Locke Lord withholds its communications with AISM and Veritas as privileged and RMI moves to compel. A delay in ruling will not change the fundamental facts, but it will have significant and costly consequences. If the Court determines now that the privilege no longer applies, Locke Lord would avoid the significant time and expense needed to make individualized privilege determinations for a substantial volume of potentially privileged documents and to log (and, if needed, redact) each potentially privileged document. Although the document review and production would remain arduous, the process and Locke Lord's rolling production would be considerably streamlined. Thus, Locke Lord's request for a ruling on privilege would resolve a genuine controversy existing in this case—whether documents sought by RMI remain subject to the attorney-client privilege—and resolution will have an immediate impact on the litigants.

Moreover, "[t]he Court has broad authority to manage the discovery process under Federal Rule of Civil Procedure 26, and Rule 26(c) expressly allows the Court to enter orders to manage discovery to avoid undue burden and expenses." *Alcorn v. City of Chicago*, 336 F.R.D. 440, 442 (N.D. Ill. 2020); *see also* Fed. R. Civ. P. 26(c)(1) (allowing a court to issue a protective order for "good cause"). That is precisely what Locke Lord seeks here: an order managing discovery to avoid undue burden and expense. In issuing such an order, the Court would not be treading new

ground. At least one other court in this District, when presented with this issue on a motion for a protective order and to determine the attorney-client privilege, resolved the privilege issue even before any specific documents had been identified as privileged. *See Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 405 (N.D. Ill. 2007) ("Even if the motion to compel did not raise the attorney-client privilege issue, clearly this is an issue that must be resolved in order to streamline discovery in this case. Therefore, we find it appropriate to address defendants' motion for protective order at this time.").

As required by Northern District of Illinois Local Rule 37.2, prior to filing this Motion, the parties conferred regarding this issue, beginning with a videoconference on December 15, 2022, at about 3:30 pm.[5] Since that time, counsel have exchanged several emails, including sharing drafts of this Motion. As previously described, counsel for RMI contests the motion as unnecessary and premature, even though Locke Lord has informed RMI that it will not produce the documents at issue until the Court resolves whether the documents remain privileged.

II.     The Dissolution of AISM and the Defunct Status of Veritas
        Likely Terminated Their Respective Attorney-Client Privileges.

Turning to the merits, the weight of authority holds that an entity's dissolution also dissolves the entity's right to assert any attorney-client privilege. Several federal magistrate judges nationwide have so ruled, including in Georgia, where AISM was organized and where Locke Lord maintains an office and performed some of its services. *See S.E.C. v. Espuelas*, No. 1:11-CV-00025-WSD, 2011 WL 12829075, at *2 (N.D. Ga. Jan. 27, 2011) (concluding that "dissolved corporation's attorney-client privilege does not survive the dissolution of the corporation absent

---

[5] Attorneys for Locke Lord (Diane Klotnia, Edward Feldman, and Kay Dawson) were in attendance, as were attorneys for RMI (Philip Curley and Robert Margolis).

8

some compelling reason" (cleaned up)).[6] Illinois law is in accord. *See, e.g.*, *John Doe Corp. 1 v. Huizenga Managers Fund, LLC*, 188 N.E.3d 1259, 1278 (Ill. App. Ct. 2021) (agreeing with "majority approach" that presumption is that the attorney-client privilege is no longer viable for a dissolved corporation). We found no Georgia or Nevada state cases addressing this issue but have no reason to believe courts in those states would dissent from the weight of authority.

The "entity-dissolution-ends-privilege" line of cases often relies on *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985). In *Weintraub,* the Supreme Court recognized that "a corporation, as an inanimate entity, must act through agents," and "[w]hen the corporation is solvent, the agent that controls the corporate attorney-client privilege is the corporation's management." *Id.* at 356.[7] When a corporation ceases to exist, however, it no longer has agents to assert the privilege. *See, e.g.*, *S.E.C. v. Carrillo Huettel LLP*, No. 13 CIV. 1735 GBD, 2015 WL 1610282, at *3 (S.D.N.Y. Apr. 8, 2015) (noting that, "as a practical matter, there is no one who can speak for a defunct corporation in order to assert the privilege"). And, although the attorney-client privilege "serves the function of promoting full and frank communications between attorneys and

---

[6] *See also, e.g., United States v. Walters*, No. 2:19-CR-51-KS-MTP, 2020 WL 1934803, at *2 (S.D. Miss. Apr. 21, 2020) ("The weight of federal authority supports a holding that there is a presumption the attorney-client privilege is no longer viable after a business entity ceases to function."); *S.E.C. v. Carrillo Huettel LLP*, No. 13 CIV. 1735 GBD, 2015 WL 1610282, at *2 (S.D.N.Y. Apr. 8, 2015) ("The weight of authority, however, holds that a dissolved or defunct corporation retains no privilege."); *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, No. 05 C 5164, 2012 WL 874322, at *4 (N.D. Ill. Mar. 14, 2012) ("ePit has undoubtedly ceased to exist, and so too has any privilege it might have been able to assert in the documents in issue."); *TAS Distrib. Co. v. Cummins Inc.*, No. 07-1141, 2009 WL 3255297, at *2 (C.D. Ill. Oct. 7, 2009) ("Absent some compelling reason to the contrary, the attorney client privilege does not survive the death of the corporation.").

[7] For purposes of privilege, the case law makes no distinction between corporations and limited liability companies. *See, e.g.*, Restatement (Third) of the Law Governing Lawyers § 73 Comment *k* (2000) ("When a corporation or other organization has ceased to have a legal existence such that no person can act in its behalf, ordinarily the attorney-client privilege terminates. . . ."). In contrast, the attorney-client privilege survives the death of a human. *Weintraub*, 471 U.S. at 356; *see also Swidler & Berlin v. United States*, 524 U.S. 399, 410 (1998).

their clients," that function already plays a more limited role for corporations, as "individual officers and directors always run the risk that successor management might waive the corporation's attorney-client privilege with respect to prior management's communications with counsel." *Weintraub*, 471 U.S. at 348, 357.

When a corporation is in legal purgatory, such as during temporary administrative dissolution or wind-up proceedings, the privilege may continue. *See, e.g.*, *Off. Comm. of Admin. Claimants ex rel. LTV Steel Co. v. Moran,* 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011) (noting "a dissolved corporation should be permitted to assert its privilege during the windup process, at least until all matters involving the company have been fully resolved and no further proceedings are contemplated" (cleaned up)).

Here, AISM has formally dissolved and there is no reason to believe it remains in purgatory six years after dissolution and nearly seven years after its asset sale to AEUH. Under the "entity-dissolution-ends-privilege" line of cases, if applicable, its privilege likely ended with its dissolution.

The same may be true of Veritas. Veritas, unlike AISM, appears not to have filed documents in Nevada to formally terminate its status as a licensed Nevada business entity, but it appears dead in fact if not in law. According to the Nevada Secretary of State, Veritas's status is "Permanently Revoked," and it has failed to make any annual filings with the Nevada Secretary of State for more than six years. Veritas also defaulted in the DOL Lawsuit, which further supports the conclusion that Veritas is no longer operating and that its defunct status will continue indefinitely. Under these circumstances, there is no reason to believe Veritas has or will continue any operations and thus no reason to treat Veritas differently from a formally dissolved entity with respect to the attorney-client privilege. *See Moran*, 802 F. Supp. 2d at 949 ("To determine whether a corporation has 'died,' courts should look to practical business realities rather than technical

10

legal status."). As with AISM, Locke Lord is not aware of any continuing operations or wind-up proceedings or the like for Veritas.

Locke Lord invites RMI and the former constituents or counsel for AISM and Veritas to address AISM's and Veritas's status and the privilege if they see fit to do so.

III.     RMI Contends that AEUH Acquired and Then Waived AISM's Privilege.

RMI contends, alternatively, that any privilege AISM held with respect to its communications with Locke Lord was transferred to AEUH when AISM sold substantially all its assets in April 2016, and that such privilege was subsequently waived by AEUH through the AEUH Waiver. *See* 12/8/22 email from RMI's counsel to Locke Lord's counsel, Ex. J.

There is authority supporting RMI's position. Federal district courts in both Illinois and Georgia have held that a transfer of most or all of a corporation's assets along with transfer of control of the corporation also transfers authority to assert or waive attorney-client privilege for the selling entity.[8] This principle is also traceable to *Weintraub*. 471 U.S. at 356 (stating that attorney-client privilege for a corporation is controlled by the corporation's agents and can pass to a trustee if the trustee has control of the corporation); *see also Am. Int'l Specialty Lines Ins. Co.*, 240 F.R.D. at 406 ("In the same regard, after *Weintraub*, several courts have recognized that assignees or transferees of most, if not all, of a corporation's assets will have the authority to assert or waive the attorney-client privilege."). Notably, in the absence of a transfer of control and most

---

[8]     *See, e.g.*, *Reichwaldt v. Gen. Motors LLC*, No. 1:16-CV-2171-TWT, 2019 WL 12518368, at *2 (N.D. Ga. Sept. 9, 2019) (holding privilege transferred to new company when it bought substantially all operating assets of old company); *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 406–07 (N.D. Ill. 2007) (examining "practical consequences" and determining that company that purchased "substantially all" assets and continued to operate the corporation "acquired the right to assert or waive the attorney-client privilege"); *Ramada Franchise Sys., Inc. v. Hotel of Gainesville Assocs.*, 988 F. Supp. 1460, 1464 (N.D. Ga. 1997) (holding that company that transferred most of its assets and control also transferred right to assert attorney-client privilege).

assets, a court may find that the privilege did not transfer to the new entity even if the agreement expressly provides for its transfer.[9] Other factors may bear on whether the privilege transferred, including whether the privileged materials were transferred to the successor (physically or electronically). *See Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, No. 05 C 5164, 2012 WL 874322, at *4 (N.D. Ill. Mar. 14, 2012).

New York law, which governs the APA, is in accord. "[W]here efforts are made to run the pre-existing business entity and manage its affairs, successor management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company's operations," but "the mere transfer of assets with no attempt to continue the pre-existing operation generally does not transfer the attorney-client relationship." *Tekni-Plex, Inc. v. Meyner & Landis*, 674 N.E.2d 663, 668 (N.Y. 1996) (but noting that privilege may not transfer as to communications relating to the acquisition itself). We have not located Illinois or Georgia state caselaw addressing this specific issue but again have no reason to think either state would not follow *Weintraub* and the other authorities cited above.

Although AEUH apparently acquired substantially all of AISM's assets and assumed control of its operations pursuant to the APA, Locke Lord was not a party to the APA and did not represent any party in connection with the APA. And neither the APA nor the AEUH Waiver expressly refers to the transfer or waiver of AISM's privilege *vis-a-vis* its communications with Locke Lord or notes whether AISM actually transferred the privileged communications to AEUH. Accordingly, other than to note RMI's contention and provide the law cited above, Locke Lord takes no position as to whether the right to control AISM's privilege transferred to AEUH as a

---

[9] *See Trading Techs. Int'l*, 2012 WL 874322, at *5 (noting "even when the parties sign a specific agreement to transfer the privilege along with certain assets, a court may nonetheless find that the privilege did not transfer" where there has not also been a transfer of most assets and control); *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, No. 01 C 4366, 2003 WL 21911066, at *1 (N.D. Ill. Aug. 7, 2003) (same).

result of the APA. Locke Lord invites RMI (which has asserted this theory), AEUH, or AISM's former management and/or agents to address this issue if they see fit to do so.

## CONCLUSION

Locke Lord respectfully requests that this Court enter an Order (i) ruling on whether the attorney-client privilege between Locke Lord and AISM has been terminated or otherwise waived, (ii) ruling on whether the attorney-client privilege between Locke Lord and Veritas has been terminated or otherwise waived, (iii) if either privilege remains intact, entering a protective order pursuant to Rule 26(c); and (iv) granting such other relief as it deems just and proper.

Respectfully submitted,

**Locke Lord, LLP**

Dated: January 27, 2023            By:    /s/ Edward W. Feldman
                                               One of its attorneys

Edward W. Feldman (efeldman@millershakman.com)
Diane F. Klotnia (dklotnia@millershakman.com)
Kay L. Dawson (kdawson@millershman.com)
Rachel Ellen Simon (rsimon@millershakman.com)
Zoe A. Jones (zjones@millershakman.com)
MILLER SHAKMAN LEVINE & FELDMAN LLP
30 West Monroe Street, Suite 1900
Chicago, Illinois 60603
(312) 263-3700

13

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on January 27, 2023, he caused the foregoing **LOCKE LORD LLP'S MOTION FOR RULING ON PRIVILEGE WAIVER OR FOR ENTRY OF A PROTECTIVE ORDER** to be served via electronic mail on the following persons:

| | |
|---|---|
| J. Graham Matherne<br>Andrew J. Pulliam<br>WYATT, TARRANT & COMBS, LLP<br>333 Commerce Street, Suite 1050<br>Nashville, Tennessee 37201<br>(615) 244-0020<br>gmatherne@wyattfirm.com<br>apulliam@wyattfirm.com | C. Philip Curley<br>Robert L. Margolis<br>ROBINSON CURLEY P.C.<br>200 North LaSalle Street, Suite 1550<br>Chicago, Illinois 60601<br>(312) 663-3100<br>pcurley@robinsoncurley.com<br>rmargolis@robinsoncurley.com |
| Tiffany S. Fordyce<br>GREENBERG TRAURIG LLP<br>77 West Wacker Drive, Suite 3100<br>Chicago, Illinois 60601<br>(312) 456-1088<br>fordycet@gtlaw.com | Daniel Hildebrand<br>LEWITAS HYMAN<br>161 N Clark Street, Suite 1600<br>Chicago, Illinois 60601<br>(844) 651-2641<br>dhildebrand@securitieslaw.com |
| Drew Peel<br>Kevin Duff<br>RACHLIS DUFF & PEEL, LLC<br>542 S. Dearborn St., Suite 900<br>Chicago, IL 60605<br>(312) 733-3950<br>dpeel@rdaplaw.net<br>kduff@rdaplaw.net | |

and via certified mail and regular first-class US mail (and via email on any email address shown below) on the following persons:

| | |
|---|---|
| AI-Closing 2017 LLC<br>c/o Elaine Nussbaum Brasch<br>255 Walhalla Court<br>Atlanta, GA 30350 | AEU Holdings, LLC<br>c/o Registered Agent Solutions, Inc.<br>838 Walker Road, Suite 21-2<br>Dover, Delaware 19904 |
| Thomas Stoughton<br>150 Overton Drive<br>Atlanta, GA 30342 | Sterling Godfrey Holding Inc.<br>2905 Lake East Dr., Suite 150<br>Las Vegas, Nevada 89117 |

| | |
|---|---|
| Charles LaMantia<br>123 Orchard Ave<br>Hightstown, New Jersey 08520 | James D'Iorio<br>16 Anthony Place<br>Ballston Spa, New York 12020<br>jdiorio@phoenixhrgroup.com |

                                                                                                              /s/ Edward W. Feldman