IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RECEIVERSHIP MANAGEMENT, INC. in its capacity as Independent Fiduciary of the AEU HOLDINGS, LLC Employee Benefit Plan and Participating Plans,<br><br>               Plaintiff,<br><br>v.<br><br>LOCKE LORD LLP,<br><br>               Defendant. | Case No. 1:18-cv-08158<br><br>Judge John F. Kness<br>Magistrate Judge Beth W. Jantz |

**PLAINTIFF'S RESPONSE TO LOCKE LORD LLP'S MOTION FOR
RULING ON PRIVILEGE WAIVER OR ENTRY OF A PROTECTIVE ORDER**

Both the undisputed facts and the law, as cited by Locke Lord itself, point in only one direction—that no privileges attach to documents relating to Locke Lord's legal services for AllInsurance Solutions Management, LLC ("AISM"), or to documents relating to its legal services for Veritas Benefits, LLC and Veritas PEO, LLC (together, "Veritas") (collectively, the "AISM and Veritas Documents"). Indeed, if Locke Lord had devoted anywhere near the level of time and effort to the legality of the AEU Plan that it has spent addressing the manifestly obvious conclusion that privileges no longer attach, it perchance would not find itself embroiled in this litigation.

Plaintiff will not presume to counsel the Court on whether Locke Lord seeks an advisory ruling. The Court has put that burden on Locke Lord. (Dkt. #116: the "motion … should address … whether the Court has authority to decide such a motion at this juncture (and the basis for any such authority), given that the requested ruling appears to be advisory."). To be sure, Plaintiff agrees no privileges attach to the AISM and Veritas Documents. It disagrees, however, that Court intervention is required on the issue.

Rather, it has been Plaintiff's position with Locke Lord over the last six weeks that because all privileges and immunities have been waived and/or terminated, it should simply produce the documents it concedes are relevant. In fact, when Locke Lord first suggested in December 2022 that *Plaintiff* bring the instant motion so that Locke could then simply agree, Plaintiff declined for the very reason that doing so would put Plaintiff in the middle of a non-existent dispute. Locke Lord has now, instead, put the Court in the middle, insisting on its stamp of approval before Locke Lord will produce the requested documents. There is no more need for such action than would exist if Locke Lord were to seek a ruling from the Court that the sky is blue.

Locke Lord's professed neutral stance on whether privileges attach is unwarranted if not an artifice, in light of (1) the overwhelming case law holding that AISM's dissolution and Veritas's "defunct" status—as characterized by Locke Lord—has terminated any privileges, and (2) the Asset Purchase Agreement pursuant to which AISM's privileges and immunities were transferred to AEU Holdings, Inc. ("AEUH"), which Locke Lord acknowledges has already waived all privileges and immunities. Locke Lord protests that the ruling it seeks is necessary to protect its interests in connection with "professional obligations." (Dkt. #117, p. 6). Again, if Locke Lord had been as concerned earlier about the "professional obligations" to its clients and other stakeholders in the AEU Plan as it is now in protecting its own interests, perhaps it would not find itself in its current position.

Were Locke Lord truly concerned over putative AISM or Veritas privileges despite the undisputed facts and the law, the proper course of action would have been for it to give notice to its former clients of Plaintiff's requests for documents and its intent to produce the documents unless privileges were asserted, and inquire whether they desired to assert privilege. In the extremely unlikely event (given their dissolved and "defunct" status) that any privileges were

actually asserted by AISM or Veritas, only then would Court intervention be appropriate. The sole authority Locke Lord cites for the procedure it advocates is American Bar Association Formal Opinion 473, arguing that its former clients AISM and Veritas are "unavailable." (Dkt. #117, pp. 6-7). However, a client is deemed "unavailable" only "after the lawyer has made reasonable efforts to notify the client." ABA Formal Op. 473, at 6. Locke Lord made no such "reasonable efforts" here before filing its Motion (or any efforts at all), which, as discussed immediately above, is exactly what it should have done before involving the Court.[1]

## THE UNDISPUTED FACTS AND THE LAW

There is no dispute that the law when applied to the undisputed facts of (1) the status of AISM and Veritas as dissolved, effectively dissolved, and/or "defunct" entities; (2) the AEUH purchase of AISM assets, including all confidential information; and (3) AEUH's waiver of all privileges and immunities, compels the conclusion that any AISM or Veritas privileges that may at one time have existed no longer attach.[2] Tellingly, even though Locke Lord characterizes the parties' pre-Motion communications as having occurred pursuant to Rule 37.2, the Motion itself is not brought under Rule 37. That is because it is undisputed that the documents Plaintiff requests exist and are relevant. For that reason, there simply is no "discovery dispute" here. Instead, there

---

[1] Citing ABA Model Rule 1.6(b)(3), Locke Lord asserts that it "is entitled to use some or all of the requested [privileged] documents to the extent [it] reasonably believes necessary to establish a defense in this case." (Dkt. #117, p. 1). Rule 1.6(b)(3), however, does not apply and provides no such thing. Were Locke Lord to use some or all privileged documents in any form or fashion, Plaintiff would, of course, also be entitled to full access to all privileged documents.

[2] Having understood from a preliminary draft of the Motion that Locke Lord might question whether the AEUH waiver dated December 4, 2020 (Exhibit A hereto), was also intended to constitute a waiver on behalf its predecessor AISM, Plaintiff recently requested that AEUH confirm that was the case. Attached as Exhibit B hereto is AEUH's confirmation dated January 30, 2023, received by Plaintiff after Locke Lord's filing of the Motion. Plaintiff forwarded the confirmation to counsel for Locke Lord last week upon its receipt.

is a "dispute" manufactured by Locke Lord, despite its own analysis that all privileges and immunities have been waived and/or terminated. (*See* Dkt. #117, pp. 8-13).

Thus, Locke Lord rightly concedes that the "weight of authority" holds that AISM's dissolution dissolves the right to assert privilege, and that "there is no reason to believe Veritas has or will continue any operations[,] and thus no reason to treat Veritas differently from a formally dissolved entity [such as AISM]," (Dkt. #117, pp. 8, 10).[3] As to the AEUH asset purchase and subsequent waiver by AEUH, Locke Lord also concedes that AEUH assumed control of AISM's operations, and the "authority" supporting the transfer of AISM's privileges and immunities to AEUH. (Dkt. #117, pp. 11-12). Locke Lord simply notes it "was not a party to the APA [Asset Purchase Agreement] and did not represent any party in connection" with the Agreement, without

---

[3] Further expanding on Locke Lord's discussion of the "weight of authority" regarding dissolved or "defunct" entities (Dkt. #117, pp. 8-11), it is clear "that a dissolved corporation does not have the right to assert the attorney-client privilege." *TAS Distrib. Co. v. Commins Inc.*, No. 07-1141, 2009 U.S. Dist. LEXIS 93750, * 4 (C.D. Ill. Oct. 7, 2009) (also noting that "[a] number of courts" have so held). That is the well-settled law in this District. *See, e.g.*, *SEC v. Ferrone*, 163 F. Supp. 3d 549, 558 n.2 (N.D. Ill. 2016) ("If these facts establish that Immunosyn had suffered its corporate death, then its attorney-client privilege would not survive absent a compelling reason"). Courts around the country adhere to this principle as well. *See, e.g.*, *Gilliland v. Geramita*, No. 2:05-CV-01059, 2006 U.S. Dist. LEXIS 65546, *12, *13 (W.D. Pa. Sept. 14, 2006) ("there should be a presumption that the attorney-client privilege is no longer viable after a corporate entity ceases to function, unless a party seeing to establish the privilege demonstrates authority and good cause," concluding that "counsel has no duty to assert the privilege on behalf of a non-functioning corporation").

The reasons that dissolved or "defunct" entities cannot assert privileges are straightforward. First, it is "consistent with the principle that the attorney-client privilege should be given the narrowest interpretation consistent with its purpose. No real purpose would be served by continuing the privilege after operations cease, as the corporation would no longer have any goodwill or reputation to maintain." *TAS Distrib.*, 2009 U.S. Dist. LEXIS 93750, at *6 (quoting, *Gilliland*, 2006 U.S. Dist. LEXIS 65546, at *12-13). Second, "[t]he possibility that a corporation's management will hesitate to confide in legal counsel out of concern that such communication may become unprivileged after the corporation's demise is too remote and hypothetical to outweigh the countervailing policy considerations supporting discoverability." *Gilliland*, 2006 U.S. Dist. 65546, at *12-13.

4

even attempting to explain why that makes a difference factually or legally. (Dkt. #117, p. 12). Locke Lord also fails to note that Brian Casey, its lead partner on the AISM and AEUH engagements acknowledged in an Opinion Letter to AEUH dated December 15, 2016, that his advice pertained to the same transaction (the AEU Plan) that was the subject of an earlier Opinion Letter to AISM, AUEH's "predecessor that designed such transaction." (Exhibit C hereto). It is artful at best for Locke Lord to now feign uncertainty over whether AEUH succeeded to AISM's privileges and immunities regarding the AEU Plan.[4]

Finally, Locke Lord's request for a blanket protective order as alternative relief is entirely without support in the Federal Rules of Civil Procedure. Before Locke Lord can even seek a protective order, it "must" first, pursuant to Rule 26(b)(5)(A)(ii), describe the documents "in a manner that … will enable other parties to assess the claim."[5] This Locke Lord has failed to do.

---

[4] Further expanding on the "authority" conceded by Locke Lord on the Asset Purchase Agreement and AEUH waiver (Dkt. #117, pp.11-12), "If the practical consequence of a transaction is that the control of the business has transferred, and that the business has been continued under the authority of the new owner, then the right to assert or waive the attorney-client privilege likewise transfers to the new owner." *UTStarcom, Inc. v. Starent Networks, Corp.*, No. 07-CV-2582, 2009 U.S. Dist. LEXIS 139483, *16 (N.D. Ill. Feb 20, 2009). "Where the new owner not only acquires certain assets, but also continues to operate the business enterprise, the practical consequence of the transaction is that control of the enterprise has passed to the new owner along with the attorney-client privilege incident to it." *Id.* Accord *Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1001 (N.D. Ill. 2008) ("If the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well.") (quoting *Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004)).

Similarly, as Locke Lord knows (since it attaches them to its Motion), Consent Orders and Judgments require the agents of Veritas (Messrs. LaMantia and D'Iorio) to cooperate in this litigation by producing all requested documents.

[5] *See, e.g. Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 n.4 (N.D. Ill. 2001) ("As courts have repeatedly pointed out, blanket objections are patently improper."). This requirement applies equally to attorneys from whom documents are sought. *See, e.g., United States v. Bernhoft*, 666 F. Supp. 2d 943, 948, 955 (E.D. Wis. 2009) (after noting "the Seventh Circuit generally forbids blanket assertions of privilege," finding that "blanket claim for attorney-client privilege

5

In fact, Locke Lord has not identified in any "manner" a single document it claims would fall within the blanket protective order it seeks. More problematic, it has not bothered to advise the Court of the terms of the protective order it seeks, asking only for "a protective order pursuant to Rule 26(c)." (Dkt. #117, p. 13). Instead, Locke Lord asks the Court for the unfettered discretion to decide what documents to withhold from production without advising the Court, Plaintiff, or anyone else, the terms of the protective order it seeks, or identifying the documents it intends to withhold from production under the protective order.

Nor is there caselaw support for the extraordinary alternative relief sought. Locke Lord unsuccessfully attempts to shoehorn its seeking of a protective order into the holding of *Am Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401 (N.D. Ill. 2007). The issue there, however, was whether, in a bankruptcy setting, the pre-confirmation debtor and/or Trustees of a Successor Liquidation Trust and a Custodial Trust were entitled to assert the attorney-client privilege as to communications both pre-bankruptcy and during the bankruptcy. Judge Mason held they were not and that the privilege belonged to the new, post-bankruptcy company. Importantly, the subpoenaed lawyers there had first reached out to the pre-confirmation debtor and Trustees to inquire whether they wished to assert the privilege; Locke Lord has not done that here. Also significant, the subpoenaed attorneys had thereafter been instructed to assert privilege; of course, Locke Lord has received no such instructions here from anyone. Judge Mason resolved competing claims over who owned the privilege. There are no such competing claims before the Court here. Judge Mason granted the protective order motion only to the extent the pre-confirmation debtor and Trustees sought to be heard on whether they were entitled to assert the privilege. No protective order was

---

necessarily fails because [attorney] has not provided a privilege log or affidavits specifying the application of privilege to each and every document.").

entered, however, allowing documents to be withheld based on privilege, much less based on a blanket assertion of privilege. Locke Lord's motion should be denied to the extent it seeks the alternative relief of a protective order.

## **CONCLUSION**

Before involving the Court, Locke Lord should have first given notice to its former clients AISM and Veritas, informed them of Plaintiff's requests for documents and its intent to produce the documents unless privileges were asserted, and inquired whether they desired to assert privilege. In the absence of such action and in light of the undisputed facts and overwhelming precedent that all privileges and immunities have been waived and/or terminated, Locke Lord should simply produce the requested documents. This outcome is warranted by Federal Rule 26(c)(2), which provides that, upon denial of a motion for protective order, which Locke Lord has sought here as alternative relief, "the court may, on just terms, order that any party … provide … discovery."

Respectfully submitted,

**Receivership Management, Inc. in its capacity as the Independent Fiduciary of the AEU Holdings, LLC, Employee Benefit Plan and Participating Plans**

February 6, 2023           By:      /s/ C. Philip Curley
                                          One of Plaintiff's Attorneys

C. Philip Curley
Cynthia H. Hyndman
Robert L. Margolis
ROBINSON CURLEY P.C.
200 North LaSalle Street, Suite 1550
Chicago, Illinois 60601
(312) 663-3100
pcurley@robinsoncurley.com
chyndman@robinsoncurley.com
rmargolis@robinsoncurley.com

J. Graham Matherne
Andrew J. Pulliam
WYATT, TARRANT & COMBS, LLP
333 Commerce Street, Suite 1050
Nashville, Tennessee 37201
(615) 244-0020
gmatherne@wyattfirm.com
apulliam@wyattfirm.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 6, 2023, in addition to filing the foregoing electronically with the Clerk of the United States District Court for the Northern District of Illinois via the ECF system, he also served **PLAINTIFF'S RESPONSE TO LOCKE LORD LLP'S MOTION FOR RULING ON PRIVILEGE WAIVER OR ENTRY OF A PROTECTIVE ORDER** via electronic mail on the following persons:

Tiffany S. Fordyce
fordycet@gtlaw.com

Daniel Hildebrand
dhildebrand@securitieslaw.com

Drew Peel
Kevin Duff
dpeel@rdaplaw.net
kduff@rdaplaw.net

and via certified mail and regular first-class US mail (and via email on any email address shown below) on the following persons:

AI-Closing 2017 LLC
c/o Elaine Nussbaum Brasch
255 Walhalla Court
Atlanta, GA 30350

AEU Holdings, LLC
c/o Registered Agent Solutions, Inc.
838 Walker Road, Suite 21-2
Dover, Delaware 19904

Thomas Stoughton
150 Overton Drive
Atlanta, GA 30342

Sterling Godfrey Holding Inc.
2905 Lake East Dr., Suite 150
Las Vegas, Nevada 89117

Charles LaMantia
123 Orchard Ave
Hightstown, New Jersey 08520

James D'Iorio
16 Anthony Place
Ballston Spa, New York 12020
jdiorio@phoenixhrgroup.com

                                              /s/ C. Philip Curley
                                      One of Plaintiff's Attorneys

# Exhibit A



December 4, 2020

Locke Lord, LLP
Terminus 200, Suite 1200
3333 Piedmont Road NE
Atlanta, GA 30305

Re: Letter of Direction as to Documents and Testimony Relating to Representation of AEUH and AEUB

Dear Sir or Madam,

AEU Holdings, LLC ("AEUH") and its affiliate AEU Benefits, LLC ("AEUB") have waived all privileges and immunities, including but not limited to the attorney-client privilege and work product immunity, which AEUH or AEUB held or hold with respect to Locke Lord, LLP ("Locke Lord") and all of Locke Lord's individual attorneys, in any way related to the allegations asserted by Receivership Management Inc. ("RMI"), the court-appointed Independent Fiduciary of the AEU Plan and Participating Plans, in the case styled *Receivership Management, Inc., in its Capacity as Independent Fiduciary of the AEU Holdings, LLC Employee Benefit Plan and Participating Plans v. Locke Lorde, LLP,* No. 1:18-cv-08158 (N.D. Ill.).

Through this letter, you are instructed to provide all documents and information, including electronically stored information or data in your possession, requested or required by legal process initiated by RMI, that evidence or relate to Locke Lord's representation of, and providing of professional services to, AEUH and AEUB, without withholding any such documents or information on the basis of attorney-client privilege, work product immunity, or any other privilege or immunity.

You are further instructed to provide testimony requested or required by legal process initiated by RMI relating to Locke Lord's representation of, and provision of professional services to, AEUH and AEUB, without withholding any such testimony on the basis of attorney-client privilege, work product immunity, or any other privilege or immunity .

Thank you.

8131 LBJ Freeway, Suite 750 Dallas TX 75251

AEU Holdings, LLC

By: _____
Authorized Representative

AEU Benefits, LLC

By: _____
Authorized Representative

cc: Robert E. Moore, Jr.
J. Graham Matherne
Alan F. Curley
Andrew Pulliam

# Exhibit B



January 30, 2023

Locke Lord LLP
Terminus 200, Suite 2000
3333 Piedmont Road NE
Atlanta, GA 30305

    Re:   *Letter of Direction as to Documents and Testimony*
              *Relating to Representation of AEUH, AEUB, and AISM*

Dear Sir or Madam:

    As you know, pursuant to an Asset Purchase Agreement dated April 26, 2016, and effective March 31, 2016, AEU Holdings, LLC ("AEUH") became the successor in interest to ALLInsurance Solutions Management, LLC ("AISM") with regard to all matters relating to your prior representation of AISM. This is to confirm, to the extent necessary, that the waiver of AEUH and its affiliate AEU Benefits, LLC dated December 4, 2020 ("Lock Lord Waiver"), extends to AISM, and that AISM has waived all privileges and immunities to the full extent described and provided for in the Locke Lord Waiver.

    Thank you.

AEU Holdings, LLC

By: _____
Authorized Representative

AEU Benefits, LLC

By: _____
Authorized Representative

cc: Robert E. Moore, Jr.
J. Graham Matherne
C. Philip Curley

# Exhibit C



**Locke Lord** LLP
Attorneys & Counselors

Terminus II, 3333 Piedmont Road NE
Suite 1200
Atlanta, GA 30305
Telephone: 404-870-4600
Fax: 404-872-5547
www.lockelord.com

BRIAN T. CASEY
Direct Telephone: 404.870.4638
Direct Fax: 404.806.5638
E-Mail: bcasey@lockelord.com

December 15, 2016

Mr. Stephen M. Satler
Chief Executive Officer
AEU Holdings, LLC
8131 Lyndon B. Johnson Freeway
Dallas, TX 75251

Re: Individual Employer Sponsored Self-Insured Employee Welfare Benefit Plans with Offshore Purchasing Trust and Stop-Loss Insurance Policy

Dear Mr. Satler:

You have asked us to address the following questions that AEU has encountered regarding the above-referenced transaction in which a Bermuda purchasing trust buys medical a stop-loss insurance policy sold and issued in Bermuda by an insurer domiciled outside the U.S. that transacts insurance in Bermuda the proceeds of which insurance the Bermuda purchasing trust distributes to its beneficiaries, which are voluntary employees' beneficiary associations formed by U.S. based small employers. The following is qualified in its entirety by our prior letter regarding such transaction dated March 3, 2014 to the predecessor that designed such transaction certain assets of which AEU Holdings, LLC acquired.

1. <u>How is a voluntary employee benefit association established and who can participate therein</u>?

Each employer establishes its own common law trust (the "Trust") for the purpose of funding health benefits under such employer's employee welfare benefit plan. The Trust becomes a voluntary employees' beneficiary association ("VEBA") by electing such status and filing Form 1024 (Application for Recognition of Exemption Under Section 501(a) with the Internal Revenue Service.

Any employer approved by AEU which is (a) an employer customer of a professional employer association ("PEO"), (b) an employer member of a bona fide affinity group or (c) an employer customer of an insurance agency (each, an "Employer Aggregator") may participate in the transaction. Thus, an employer does not have to be a contracted member of a PEO to participate in the transaction.

ATL 539012v.4

CONFIDENTIAL as to any PII or HIPAA information

Locke Lord LLP

Mr. Stephen Satler
President
AEU Holdings, LLC
December 15, 2016
Page 2

2. <u>Nature of the medical stop-loss insurance provided to the Bermuda purchasing trust</u>.

The Bermuda purchasing trust purchases a medical stop-loss insurance policy from an insurance company domiciled outside of the U. S. The solicitation, negotiation, sale, and delivery of the medical stop-loss insurance policy all occurs in Bermuda. No person solicits a VEBA to purchase a medical stop-loss insurance policy, nor does any VEBA control the Bermuda purchasing trust's purchase of the medical stop-loss insurance policy. The Bermuda purchasing trust pays all premiums due on the medical stop-loss insurance policy from its bank account maintained at a bank located in Bermuda.

3. <u>Does the transaction create a multiple employer welfare arrangement</u>? The transaction is intended not to create a multiple employer welfare arrangement because no participating employer or its VEBA agrees to bear any risks of, or indemnify, any other participating employer or its VEBA for such other participating employer's or its VEBA's costs of paying claims for the health benefits made by such other participating employer's employees. Furthermore, no participating employer's VEBA provides any health benefits to the employees of any other participating employer.

4. <u>Applicability of state PEO laws prohibiting self-funding of health benefits</u>.

PEO laws, such as those that exist in California, New York and Pennsylvania, that effectively prohibit a PEO from self-insuring for health benefits purposes by making a PEO multiple employer welfare arrangement do not apply to the transaction because no PEO agrees to provide, or in fact provides, any health insurance benefits to any the employees of the PEO's employer customers that participate in the transaction. Indeed, no PEO is the sponsor of a VEBA formed by its employer customers.

Please let me know if you have any further questions regarding any of the above.

Sincerely,

Brian T. Casey
For the Firm

ATL 539012v.4

AEUB00390602