**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RECEIVERSHIP MANAGEMENT, INC.**<br>**in its capacity as Independent Fiduciary**<br>**of the AEU Holdings, LLC Employee**<br>**Benefit Plan and Participating Plans,** | ) <br> ) <br> ) <br> ) <br> ) | |
| **Plaintiff,** | ) <br> ) | **Case No. 1:18-cv-08158** |
| **v.** | ) <br> ) <br> ) | **Judge John F. Kness**<br>**Magistrate Judge Beth W. Jantz** |
| **LOCKE LORD LLP,** | ) <br> ) <br> ) | |
| **Defendant.** | ) | |

## JOINT STATUS REPORT

The parties hereby submit the following Joint Status Report pursuant to the Court's Order dated January 20, 2023 [Dkt. #116].

1. Document production by the parties has proceeded consistent with the Court's January 20, 2023 Order (the "1/20/23 Order") [Dkt. #116]. The parties agreed on a Confidentiality Order, entered on March 15, 2023 [Dkt. #124]. The parties also agreed on an Inadvertent Production Order, entered on January 30, 2023 [Dkt. #120].

2. The 1/20/23 Order directed the parties to "explain with specificity the progress the parties have made in written discovery and any disputes or issues that have arisen," and to "provide an update on any settlement discussions and indicate whether the parties are interested in a settlement conference at that time." Paragraphs 3-12 below provide the requested detail regarding discovery, and paragraph 13 below addresses settlement.

3. The parties have conferred regarding potential disputes arising out of the written discovery served thus far, with the goal of eliminating the need for the Court to intervene through motion practice. The Court has under advisement Locke Lord's fully briefed Motion for Ruling

on Privilege Waiver or For Entry of a Protective Order ["Privilege Waiver Motion," Dkts. #117, 121]. With that exception, no other discovery matters presently require the Court's consideration; the parties continue to confer.

4.      In its 1/20/23 Order, the Court directed Plaintiff "to produce any outstanding documents that it has agreed to produce by 2/28/23." Plaintiff has represented that it has done so. On March 7, 2023, Locke Lord served a second set of document requests on Plaintiff. Plaintiff's written response to that second request and its additional production, if any, is not yet due. Locke Lord has also served written requests for admission and interrogatories on Plaintiff.

5.      Plaintiff proposes that all additional written discovery be served no later than April 30, 2023. Plaintiff believes interim deadlines are necessary and, in Plaintiff's counsel's experience, a typical practice in the Northern District. For example, Locke Lord served its First Set of Requests to Produce Documents on November 22, 2022. Locke Lord's Second Request to Produce Documents was not served until March 7, 2023, one hundred and five (105) days later. Plaintiff is concerned that if written discovery drags out without an interim deadline, depositions will necessarily be delayed and the Court's fact discovery cut-off of January 31, 2024, will be imperiled. [Dkt. #116]. Locke Lord's position that written discovery should be permitted until the fact discovery deadline confirms Plaintiff's concern. Truly unanticipated written discovery can be permitted after the interim deadline upon a showing of good cause, the standard typically applied in such circumstances.

Locke Lord believes that Plaintiff's proposal to set interim discovery cutoffs is beyond the limited purpose of the status report requested by the Court. In any case, for the reasons discussed in its Status Report filed on January 10, 2023 (ECF #115), Locke Lord also believes it would be premature to set such a date at this time, particularly in light of (i) the voluminous amount of

documents that have already been produced to Locke Lord and that Locke Lord still needs to review to prepare its defenses; (ii) the lack of usual metadata for a substantial portion of that production, which hinders Locke Lord's review; and (iii) the substantial volume of internal documents that Locke Lord needs to review for its own production to respond to Plaintiff's written discovery, discussed in more detail in Paragraphs 7-10 below.  In addition, Locke Lord's review of the documents produced by the parties and by third parties, as well as deposition testimony, is likely to yield information warranting additional written discovery.  Locke Lord disagrees with Plaintiff's view that this issue will delay depositions or the current fact discovery cutoff, and Plaintiff gives insufficient weight to the volume of review that remains and the high likelihood that deposition testimony will produce information requiring follow-up.  Given the breadth of the discovery requests to date, any supplemental requests would likely be narrowly focused and not burdensome.  The fact that Locke Lord issued its second document request nearly four months before the June 30 deadline for completing production is a red herring, especially given that Locke Lord had been concentrating on complying with its own massive production obligations.  Moreover, Plaintiff is largely producing documents previously produced in discovery in related litigation, so the second document request, although comprehensive, will likely fill in gaps concerning issues specific to this case.  For these reasons, Locke Lord believes that written discovery should remain open through the period for fact discovery, which is currently set for January 31, 2024.

6.      In its 1/20/23 Order, the Court also directed Locke Lord to make its first rolling production to Plaintiff by January 31, 2023, and to complete its rolling productions by June 30, 2023.  As discussed in more detail below, Locke Lord has made two rolling productions, on January 31 and February 28, 2023, and is continuing to review and prepare documents for further

productions. Paragraphs 7-10 below consist of Locke Lord's report as to its progress in reviewing and producing documents.

7.     Locke Lord has already reviewed several thousand electronically stored documents identified through broad word searches on emails maintained by relevant custodians and on Locke Lord's document management system. The vast majority of the documents have either been subject to privilege issues, some of which are the subject of the Privilege Waiver Motion, or have been non-responsive. To date, Locke Lord has produced 991 documents totaling 4,776 pages. Locke Lord estimates that it likely has more than 15,000 additional emails and other electronically stored documents to review to identify potentially responsive documents.

8.     For purposes of its initial rolling productions, Locke Lord has prioritized reviewing documents dated after June 1, 2016, as the majority of responsive, post-June 1, 2016 documents involve communications with Locke Lord's now-former client, AEUH. Because AEUH has waived any privilege with respect to its communications with Locke Lord, the post-June 1, 2016 documents, for the most part, do not implicate the privilege issues raised in Locke Lord's Privilege Waiver Motion.

9.     In contrast, as discussed in Locke Lord's Privilege Waiver Motion, the vast majority of potentially responsive documents dated before June 1, 2016, contain privileged communications between Locke Lord and its former client, AISM (as well as a smaller number of communications with another former client, Veritas Benefits, LLC, both before and after June 1, 2016). In its Privilege Waiver Motion, Locke Lord has asked the Court to resolve those potential privilege claims so that Locke Lord can reasonably proceed with its document review and production. As Locke Lord advised the Court, a determination that the privileges applicable to communications with AISM and Veritas no longer apply would relieve Locke Lord of having to

4

make individualized privilege determinations and to log or redact thousands of documents based on privilege. *Id.* at 7. Locke Lord estimates that there are about 8,000 pre-June 1, 2016 documents, consisting of more than 80,000 pages, to be reviewed for potential responsiveness.

10.     In addition to reviewing its own documents to respond to Plaintiff's document requests, Locke Lord has also continued reviewing Plaintiff's voluminous productions to Locke Lord, which it estimates total more than 628,000 documents consisting of more than 2.7 million pages. As Locke Lord noted in its prior status report [Dkt. # 115, at 3-4], its ability to review Plaintiffs' produced documents has been hampered by the fact that a substantial volume (estimated to be at least 100,000 documents) were produced without any metadata, including basic information, such as date, sender, and recipient(s). Additionally, other documents were produced as massive, non-unitized PDFs, which require significant effort to break down into individual documents, and are similarly missing metadata. Plaintiff has advised Locke Lord that it has produced documents in the same format and with the same metadata with which they were produced to Plaintiffs in related litigation. However, the lack of metadata and the non-unitized PDFs make targeted searching and sorting much more difficult, hampering Locke Lord's ability to review Plaintiff's production and prepare its defenses. These issues are of particular concern given the substantial volume of documents to be reviewed and the fact that Plaintiff has had a head start of two years with regard to these documents. Locke Lord has been working to resolve the issues, but any solution will likely require significant expenditures of both time and money. Plaintiff disagrees it has had a head start of two years with regard to documents related to its claims against Locke Lord and is continuing its document review.

11.     Plaintiff has issued 50 third-party document subpoenas. Locke Lord has issued four third-party document subpoenas and expects to issue others. The parties have agreed to provide

each other the written responses and documents produced by the subpoenaed parties.

12. Plaintiff proposes that all additional third-party document subpoenas be issued no later than April 30, 2023, and that motions with respect thereto, if any, be brought by the Parties within 45 days after service of Responses and Objections by the subpoenaed third parties. Again, Plaintiff believes an interim deadline is necessary. For example, Locke Lord has served just four third-party document subpoenas in the one hundred and five (105) days since it initiated written discovery. All four third-parties are believed to have been known to Locke Lord for some time. In fact, Locke Lord's third-party document subpoena to Alston & Bird was not issued until February 7, 2023, even though Alston & Bird was the subject of a specific request in Locke Lord's First Set of Document Requests served on Plaintiff on November 22, 2022. This not a matter of "scorekeeping" as Locke Lord suggests. Plaintiff is concerned that if issuance of third-party document subpoenas drags out without an interim deadline, depositions will necessarily be delayed and the Court's fact discovery cut-off of January 31, 2024, will be imperiled. [Dkt. #116]. Locke Lord's position that third-party document subpoenas should be permitted until the fact discovery deadline confirms Plaintiff's concern. Truly unanticipated third-party document subpoenas can be permitted after the interim deadline upon a showing of good cause, the standard typically applied in such circumstances.

Locke Lord believes it would be premature for the Court to set subpoena deadlines at this time for the same reasons as set forth in Paragraph 5 regarding party discovery: in addition to the sheer volume of documents to be reviewed (and related difficulties), document review and deposition testimony are likely to yield information warranting additional document subpoenas. Such discovery should remain open through the period for fact discovery. Locke Lord believes that Plaintiff again overstates the risk that this issue would imperil the discovery cutoff date or

delay depositions.  Plaintiffs' scorekeeping of 50-4 is meaningless.  Rather than issue many dozens of subpoenas at once, Locke Lord is prioritizing and tailoring its subpoenas (and related burdens on third parties) based on its ongoing review of its own documents and those produced by Plaintiff. It anticipates sending several more subpoenas in the next thirty days.  But it should not be precluded from issuing additional subpoenas during the fact discovery period as the record develops.

13.     Plaintiff believes that a Settlement Conference at this time would be premature, but will reassess once Locke Lord completes its document production.  Locke Lord continues to believe that the parties would benefit from an early settlement conference but will reassess after the parties complete document production.

14.     The deadline for the parties to amend the pleadings is July 31, 2023, and fact discovery closes January 31, 2024. [Dkt. #116].

15.     The parties propose that another Joint Status Report be submitted in 60 days.

Dated: March 16, 2023                    Respectfully submitted,

**Counsel for Plaintiff Receivership Management, Inc., in its capacity as Independent Fiduciary of the AEU HOLDINGS, LLC Employee Benefit Plan and Participating Plans**

_____/s/_____
J. Graham Matherne


_____/s/_____
C. Philip Curley

**Counsel for Defendant Locke Lord LLP**

_/s/_

Edward W. Feldman