UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RECEIVERSHIP MANAGEMENT, INC. ) <br> in its capacity as Independent ) <br> Fiduciary of the AEU HOLDINGS, ) <br> LLC Employee Benefit Plan and ) <br> Participating Plans, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LOCKE LORD LLP, ) <br> ) <br> Defendant. ) | Case No. 1:18-cv-08158 <br><br> Judge John F. Kness <br> Magistrate Judge Beth W. Jantz |

**MEMORANDUM OPINION AND ORDER**

    Before the Court is Defendant Locke Lord LLP's Motion for Ruling on Privilege Waiver or for Entry of Protective Order [117] and Plaintiff's Response in opposition [121]. The Court notes that Locke Lord LLP served its motion on several persons who might have an interest in asserting attorney-client privilege over the documents that Plaintiff seeks from Locke Lord,[1] but to this Court's knowledge none have responded or sought to intervene in this lawsuit.

    For the reasons stated herein, Defendant's motion is granted in part and deferred in part. As explained in detail below, given AEUH's explicit waiver of attorney-client privilege on behalf of AISM, Defendant Locke Lord LLP is ordered to produce all communications responsive to Plaintiff's request for communications between AISM and Locke Lord, by a deadline mutually agreed to by the parties. As for Veritas Benefits, LLC ("Veritas"), Defendant is directed to take further action (deadlines below) to contact any individuals who may continue to have authority to assert privilege on behalf of Veritas, including James D'Iorio and Charles LaMantia, and to provide them with notice of this Order and an opportunity to respond, prior to any judicial determination that the privilege is waived or terminated.

---

[1] Defendant asserts that it served a copy of its Motion on the following individuals at their last known addresses: (i) AISM's former registered agent; (ii) Thomas Stoughton, one of AISM's last known officers and an individual party and signatory to the Asset Purchase Agreement between AISM and AEUH, discussed below; (iii) AEUH's registered agent; (iv) AEUH's lawyers in related litigation, *Walsh v. AEU Benefits, LLC, et al.*, No. 1:17-cv-07931 ("DOL Lawsuit"); (v) Sterling Godfrey Holding Inc., the manager for Veritas listed with the Nevada Secretary of State; (vi) Charles LaMantia and James D'Iorio, who apparently were the sole owners of Sterling Godfrey and had management roles with Veritas, and (vii) LaMantia's lawyers in the DOL Lawsuit. [Dkt. 117 at 3.]

**STATEMENT**

This case stems from the collapse of an employee health benefits plan created and operated by ALLInsurance Solutions Management, LLC ("AISM"), which was subsequently acquired by AEU Holdings, LLC ("AEUH") in 2016. The AISM Plan, which was made up of hundreds of individual employer-sponsored employee benefits plans, became unable to pay all the insurance claims against them. The Plans were sued by the Secretary of Labor[2], the Plans were terminated, and Plaintiff Receivership Management, Inc. ("RMI") was appointed as the Independent Fiduciary (IF).

In this lawsuit, Plaintiff RMI seeks to hold Defendant Locke Lord LLP, which is a law firm, liable for providing faulty legal advice and services guiding the creation of the employee health benefits plans between 2013 and 2016. Plaintiff has sought discovery from Defendant which includes communications between Locke Lord and AISM, as well as communications between Locke Lord and Veritas Benefits, LLC ("Veritas"). Defendant Locke Lord has refused to provide these documents without a ruling from this Court that these documents are no longer protected by attorney-client privilege.

1. **Presence of a Dispute**

Plaintiff argues that Defendant's motion seeks an advisory opinion and that there is, in fact, no real dispute as to whether the attorney-client privilege remains intact. [Dkt. 121 at 3-5.] Defendant's motion states that it has "no objection to producing the documents if the Court finds that there has been a waiver" and goes on further to state that Defendant "reserves its right" to produce the documents "under applicable Rules of Professional Conduct in order to defend itself in this litigation." [Dkt. 117 at 1.] Defendant states clearly that it neither advocates for nor opposes a finding that the documents are no longer protected by attorney-client privilege, though the motion goes on to summarize "substantial authority" for the position that the attorney-client privilege has dissolved along with the apparent dissolution of AISM and Veritas. [Id. at 2.]

While federal courts are not permitted to render advisory opinions (that is, resolve questions of law that are not presented by the facts of the case, *see In re Chi., Rock Island & Pac. R.R. Co.,* 772 F.2d 299, 303 (7th Cir. 1985)), the courts *do* have inherent authority to manage discovery. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013) ("[M]agistrate and district courts enjoy extremely broad discretion in controlling discovery.") And here, Defendant has refused to produce around 8,000 relevant documents, consisting of nearly 80,000 pages of communications with AISM and Veritas, out of concern that it may violate attorney-client privilege in doing so. [Dkt. 125 at 4-5.] Moreover, Defendant seeks alternative relief, in the form of a protective order, if the Court determines that these documents are subject to ongoing attorney-client privilege. [Dkt. 117 at 3.]

Given that the unresolved question of attorney-client privilege has stalled discovery in part and prevented Plaintiff from obtaining relevant documents [dkt. 125 at 4-5], this Court finds that it has the authority to rule on the question of whether Locke Lord's communications with

---

[2] Case number 17-cv-7931, also pending in the Northern District of Illinois.

AISM and Veritas continue to be protected by attorney-client privilege, and that doing so would not constitute an impermissible advisory opinion but rather permissible discovery management. *See Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 405 (N.D. Ill. 2007).

## 2. Governing Law

Neither party expressly addresses which jurisdiction's law governs this dispute, or whether federal or state law is controlling. The parties agree, however, that the "weight of authority" holds that the dissolution of a corporation ends the attorney-client privilege, citing mostly federal court decisions from various jurisdictions and, in the case of Defendant, one Illinois appellate court decision. [Dkt. 117 at 9-10; Dkt. 121 at 3-5.] That lone Illinois state court decision, *John Doe Corp. 1 v. Huizenga Managers Fund, LLC*, appears to be the only caselaw thus far addressing this issue under Illinois state law. 188 N.E.3d 1259, 1282 (Ill. App. 2d Dist. 2021), *appeal denied sub nom. Doe Corporation1 v. Huizenga Managers Fund*, LLC, 183 N.E.3d 879 (Ill. 2021).

When a federal court has jurisdiction over a matter based on the diversity of the parties, as in this case, Rule 501 of the Federal Rules of Evidence provides that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *See also Doe v. Archdiocese of Milwaukee,* 772 F.3d 437, 440 (7th Cir. 2014) (holding that Wisconsin's privilege law, rather than federal common law, applied to an action in diversity where state law provided the rule of decision).  Here, the district court already has determined that Illinois state law governs the rule of decision in this case. [Dkt. 96 at 10-11.] Thus, this Court finds that Illinois state law also governs the privilege question presented here. *See United States Sur. Co. v. Stevens Family Ltd. P'ship,* No. 11 C 7480, 2014 WL 902893, at *2 (N.D.Ill. Mar. 7, 2014) (where district court has already employed forum state's choice of law rules and "determined the substantive law applicable to a claim based on state law, the privilege issues are determined by that same state's law.")

In *John Doe Corp. 1,* the Illinois appellate court addressed the question of whether a corporation can maintain attorney-client privilege once the corporation has dissolved, in what appears to be a matter of first impression under Illinois state law.  188 N.E.3d at 1282 ("whether the attorney-client privilege survives a corporation's dissolution is a question of first impression in Illinois"). Recognizing that the privilege survives the death of an individual person, the Illinois court nonetheless took the majority approach of holding that the privilege does *not* survive the death of a corporation, as the relevant concerns apply differently to a corporation than they would for an individual. *Id.* at 1278-9 (citing, among other authority, *TAS Distrib. Co. v. Cummins Inc.*, No. 07-1141, 2009 WL 3255297, at *1 (C.D. Ill. Oct. 7, 2009)). For example, "communications between current corporate managers and their attorneys are already subject to disclosure by future management, corporations do not have reputations to protect after dissolution, they do not have friends and family who could be embarrassed or harmed, and there are limitations periods for suing a dissolved company." *John Doe Corp. 1,* 188 N.E.3d at 1278. Moreover, "[l]imiting the duration of the attorney-client privilege to the life of a corporation is consistent with the principle that the privilege is to be construed narrowly because it withholds relevant information from the judicial process." *Id.* at 1279.

Under *John Doe Corp. 1,* whether or not a dissolved corporation can continue to assert attorney-client privilege depends on whether the corporation is truly "dead," rather than "in some other state, such as windup phase, bankruptcy or liquidation, or having merged into or been acquired by a successor." 188 N.E.3d at 1279. The inquiry looks to "practical business realities" rather than relying merely on "technical legal status." *Id.* (citing *Off. Comm. of Admin. Claimants ex rel. LTV Steel Co. v. Moran*, 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011)). If a person or entity "succeeds the defunct company's interests" and retains authority to assert the privilege, then the privilege has not dissolved. *Id.* If no manager or other representative continues to have authority to assert the privilege on behalf of the corporation, then it terminates, as the court held in *John Doe Corp. 1.*, 188 N.E.3d at 1281.

### 3. Whether AISM Retains Attorney-Client Privilege

Defendant Locke Lord represents in its motion that AISM retained Locke Lord in December 2012 to provide insurance regulatory compliance advice, and that a little more than three years later, in April 2016, AEUH purchased, "with some exclusions, all assets of AISM, including all confidential information." [Dkt. 117 at 4.] After the purchase, AEUH separately retained Locke Lord to advise it on state and federal compliance matters related to its employee health benefits plans. [Id.] Locke Lord states that it last billed time to AISM in May 2016. [Id.] Locke Lord then attaches a printout from the Georgia Secretary of State's website indicating that AISM dissolved its status as a corporate entity in December 2016. [Id.]

In October 2022, Plaintiff RMI served a document request on Locke Lord, seeking "[a]ll documents related to or reflecting communications between Locke Lord and any other person or entity involving or pertaining to AISM." [Dkt. 117 at 5.] Shortly thereafter, in December 2022, RMI provided Locke Lord with a letter, dated December 4, 2020, from AEUH to Locke Lord. [Id. at 4-5.] In the letter, attached as an exhibit [117-4], AEUH purported to waive all privileges which AEUH held with respect to communications between it and Locke Lord, and instructed Locke Lord to turn those over. [Dkt. 117-4.] The Court understands from the parties' recent joint status report that Locke Lord has, in fact, turned (or is in the process of turning) over the requested communications between it and AEUH. [Dkt. 125 at 4.]

Locke Lord then sought clarification from AEUH as to whether its waiver of attorney-client privilege extended to communications between AISM and Locke Lord, to which AEUH responded that it did. [Dkt. 121 at 15.] In a January 30, 2023 letter, AEUH wrote:

> As you know, pursuant to an Asset Purchase Agreement dated April 26, 2016, and effective March 31, 2016, AEU Holdings, LLC ("AEUH") became the successor in interest to ALLInsurance Solutions Management, LLC ("AISM") with regard to all matters relating to your prior representation of AISM. This is to confirm, to the extent necessary, that the waiver of AEUH and its affiliate AEU Benefits, LLC dated December 4, 2020 ("Lock (sic) Lord Waiver"), extends to AISM, and that AISM has waived all privileges and immunities to the full extent described and provided for in the Locke Lord Waiver.

[Id.]

Before AISM dissolved its legal status, AEUH purchased its assets along with its confidential information. Thus, the "practical business reality" is that, even if AISM's privilege continues past its dissolution, then the only entity capable of asserting or withholding that attorney-client privilege on behalf of AISM is its purchaser, AEUH. *See John Doe Corp. 1,* 188 N.E.3d at 1279 (explaining that where a corporation has been merged into or been acquired by a successor, an entity "succeeds the defunct company's interests and has the authority to assert the privilege"); *see also Parus Holdings, Inc. v. Banner & Witcoff, Ltd.,* 585 F. Supp. 2d 995, 1001 (N.D. Ill. 2008) ("If the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well." (internal citation omitted)) AEUH, as the successor in interest to AISM, has explicitly waived the privilege on AISM's behalf. [Dkt. 121 at 15.] Thus, Locke Lord cannot withhold the AISM communications sought by Plaintiff on the basis of attorney-client privilege.

### 4. Whether Veritas Retains Attorney-Client Privilege

The current status of Veritas is, unfortunately, less clear. As background, Defendant states in its motion that Veritas retained Locke Lord to represent it in state insurance regulatory, PPACA, and ERISA compliance matters connected to certain employee health benefits plans and products around January 2016. [Dkt. 117 at 5.] Locke Lord represents that it last billed time to Veritas in February 2017. [Id.]

Locke Lord attaches to its motion a printout from the Nevada Business Portal showing that "VERITAS BENEFITS, LLC" has had its entity status "permanently revoked" and its termination date is "perpetual." [Dkt. 117-5.] There is no registered agent—in fact, the field for listing the name of the individual or legal entity serving as the registered agent simply says, "RESIGNED." [Id.] However, the printout does list "Sterling Godfrey Holding Inc." as the manager for Veritas. [Id.]

All of this suggests that Veritas may no longer have technical legal status as a corporation under Nevada law, but that is not the sole or even the primary consideration here. *See John Doe Corp. 1,* 188 N.E.3d at 1279 ("In determining whether a corporation is dead, courts should look at practical business realities rather than technical legal status."), *citing Off. Comm. of Admin. Claimants ex rel. LTV Steel Co. v. Moran,* 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011). Rather, if Veritas is still winding down operations, continues to be a party to legal proceedings, or has been merged into or acquired by a successor, then a current manager, corporate representative, or successor of Veritas could still assert privilege on Veritas' behalf. *Id.*

On the slim evidence provided, this Court is not able to reach a definitive conclusion as to whether Veritas is truly "dead," or in some other state. While Locke Lord points out that default judgment was entered against Veritas in the ongoing lawsuit brought by the Secretary of Labor, Case No. 17-cv-07931 (N.D. Ill.), it appears from that case that James D'Iorio and/or Charles LaMantia may still be involved with the windup of Veritas Benefits, LLC. Indeed, from what this Court can discern from the docket in that case, Mr. D'Iorio has made conflicting representations as to whether he continues to be involved in the management of Veritas Benefits. In April 2021, Mr. D'Iorio represented that he was "no longer a member of the Veritas Companies." [Case No.

17-cv-07931, Dkt. 591 at 2.] But in August 2021, Mr. D'Iorio represented to counsel for the Secretary of Labor that he was considering opposing the Secretary's motion for default judgment against Veritas. [Id. at Dkt. 616.] While D'Iorio did not ultimately object to that motion and the motion was granted, the case remains open.

Locke Lord represents that it served a copy of its motion on Mr. D'Iorio, Mr. LaMantia, Mr. LaMantia's lawyer in the DOL litigation, AEUH's lawyers in the DOL lawsuit, Elaine Nussbaum Brasch (AISM's former registered agent), Registered Agent Solutions, Inc. (AEUH's former registered agent), Thomas Stoughton (a former AISM officer), and Sterling Godfrey Holding Inc. (manager of Veritas). [Dkt. 117 at 3, 14-15.] However, just providing notice of the motion may not be sufficient to provide those entities with direction on whether or how they could respond to assert privilege on behalf of Veritas if they can and wish to, which is essentially what Plaintiff RMI argues that Defendant Locke Lord should have done in the first place. Thus, to resolve whether or not Veritas retains the ability to assert (and/or interest in asserting) attorney-client privilege over its communications with Locke Lord, Locke Lord must serve everyone previously noticed, as listed above, with a copy of this order by no later than 6/21/23.

These listed entities (and any other agents, officers, and managers) will then be given until 7/7/23 to respond to Locke Lord **and** to this Court as to whether any of them are currently acting as a corporate representative or manager for Veritas Benefits, LLC and/or whether Veritas Benefits, LLC, continues to exist as a corporate entity under anyone's control. If anyone comes forward during that time with information showing that Veritas Benefits, LLC is not defunct and that they have the authority and wish to assert privilege on behalf of Veritas Benefits, LLC with regards to attorney-client communications between Locke Lord and Veritas, this Court will take that information under advisement and make a determination as to whether the privilege may be asserted.

If by 7/7/23, no manager, registered agent, or officer comes forward with information that Veritas Benefits, LLC has current managers or continues to function as a corporate entity (including in a wind-up period), the Court will assume that the corporation is defunct, as Locke Lord represents [dkt. 117 at 2, 10-11] and that the attorney-client privilege has expired along with the entity. *See, e.g., Gilliland v. Geramita,* No. 2:05-CV-01059, 2006 WL 2642525, at *4 (W.D. Pa. Sept. 14, 2006) (concluding that burden is on party seeking to invoke the privilege, and ordering documents produced, where corporation had ceased operations, former CEO had died and been replaced by his estate for purposes of litigation, default judgment had been entered against corporation, and corporation was, for all practical purposes, out of business even though it had not been dissolved and still existed as a legal entity); *see also John Doe,* 188 N.E.3d at 1279 ("having someone with the authority to speak for the 'client'" evidences "some form of continued existence" (internal citation omitted); *see also TAS Distrib. Co. v. Cummins Inc.,* No. 07–1141, 2009 WL 3255297 (C.D. Ill. Oct. 7, 2009). ("No real purpose would be served by continuing the privilege after operations cease, as the corporation would no longer have any goodwill or reputation to maintain."). In that event, Locke Lord will be ordered to produce its communications with Veritas within a time period agreed to by the parties.

E N T E R:

Dated: 6/7/23

*[signature: Beth W. Jantz]*

BETH W. JANTZ
United States Magistrate Judge